WUNDERLICH *et al. v.* WALKER.

(Division B. June 5, 1939. Suggestion of Error Overruled July 7, 1939.)

[189 So. 523. No. 33724.]

150

**Stevens & Stevens** and **Bob Ray,** all of Jackson, for appellants.

**G. M. Milloy,** of Prentiss, and **Hall & Hall,** of Columbia, for appellee.

Argued orally by **J. Morgan Stevens**, for appellant, and by **Lee D. Hall**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This was a suit brought as an attachment in Chancery against Martin Wunderlich and others, constituting a partnership trading under the firm name of the Martin Wunderlich Company, for the death of Willie Knight, an' employe of the Martin Wunderlich Company. The Bank of Blountville, a resident corporation, was made a defendant, the other defendants being non-residents.

The deceased, Willie Knight, was employed with the crew engaged in working on a public highway contract, broadening the road. The Martin Wunderlich Company, at the time of the accident, was working at night, removing stumps and other matter from the portion of the highway to be broadened; and it was the duty of Willie Knight, the deceased, and another employe, to attach the cable of the tractor to the stumps to be removed—the power of the caterpillar tractor being used to move the stumps off the right of way, in order for the grading and excavating to be carried on.

The deceased and his companion had attached the cable to a stump, and the tractor was moving it away to a point some little distance from the right of way, which required something like 20 or 25 minutes to do this and return. The foreman was on the job, and had specified the stump next to be removed; and the employe and the operator of the tractor knew of the one selected. The

deceased, Willie Knight, appeared to be sleepy, and the foreman had told him to get off the right of way if he were going to sleep—not to lie on the right of way, as the tractor would injure or kill him. Other employes also advised him, if he were sleepy, to go home and sleep, until he became accustomed to night work, in which he had been engaged only a few nights. Instead of doing as he was told, he went to sleep on the right of way, in a little depression, the main part of his body lying in the depression, with his head on one side thereof, and his feet on the other. He wore dark working clothes, one witness testifying that they were khaki colored, and another that he had on blue denim pants and brown shirt, and that he lay with his cap under his head. On the return trip to the next stump the operator of the tractor did not see the deceased as he lay on the right of way, and the tractor ran over him, crushing and killing him. This suit was brought to recover for this fatal accident.

The testimony shows that the place where the work was being done was lighted with two Koehler lights, one placed at one end and the other at the other end of the section of the road on which they were at work, facing in opposite directions to light the location on which the men were at work. The tractor was equipped with three lights, two in front and one in the rear. One of the witnesses testified that all these lights were of the same candle power, described as "32-32;" that one of the front lights was placed on the side of the tractor, and the other front light was elevated over the top of the tractor; the rear light making the third. The tractor was also equipped with a blade several feet long, and twenty-odd inches wide, located on the front, capable of being manipulated as needed, lowered or elevated. When lowered it was used either to push dirt or pull stumps or to remove obstructions from the path of the tractor, and when not in use it was elevated some inches above the ground. It was in an elevated position when this accident occurred. The operator of the tractor testified that he could see in

front of the tractor, that the lights thereon were suitable for the use to which the machine was put; that on approaching the stump next to be removed he noticed that one of the employes was sitting on the stump, but did not see the other, and wondered where he was, deciding that he had probably gone for water, provided for drinking purposes in a barrel a short distance away, on the side of the road; that he did not see the deceased at the time he was run over, but that deceased was discovered by the other employe after the tractor had run over him and proceeded about thirty feet. The tractor was then stopped, and the other employe, the operator of the tractor, and others going to the body, found that the tractor had passed over his stomach. He was still alive, but died in a little while, some of the witnesses testifying that he was dead when they reached the body.

There was some testimony to the effect that the light on the right of the tractor, while it illuminated the pathway of the tractor for some distance on the level, did not shine immediately in front of the tractor because of the elevation of the blade. Only one witness testified to what could be seen from the driver's seat, on top of the tractor—to the effect that he could see in front of the tractor; that the light on top thereof was some six feet from the ground, that he could see the ground in front of him, but did not see the deceased lying in the pathway of the tractor. He stated that the tractor made a good deal of noise in its operation, several other witnesses testifying to that fact.

There was a verdict in the court below for the plaintiff in the sum of $3,000. The deceased had no father or mother, brothers or sisters, his only relative, as disclosed by the record, being a cousin who lived at a distance, with whom he was accustomed to meet and associate.

It is claimed that the tractor was negligently operated, and was insufficiently lighted, which did not render the place at which the work was being done at night reasonably safe. The evidence shows that the tractor had

been used at other points in the county, that it was being operated in the customary way, and that it was sufficiently lighted for the character of work for which it was being used. In such cases the duty of the master is to use reasonably safe appliances; but he is not an insurer of the safety of employes or of the work. It is his duty to exercise reasonable care. In order to render the company liable for an injury sustained by its employe, the injury from the operation of its machine must be such as could reasonably have been foreseen by a reasonably prudent person.

In our opinion, the company could not reasonably foresee that an employe would deliberately lie down in the pathway of the tractor and go to sleep, especially as he had been directed to get off the right of way if he desired to sleep, and warned that if he went to sleep on the right of way or in the path of the tractor he would be killed. The body of the deceased was in such a position when the accident occurred as to render it difficult to be seen; and there is nothing, in our opinion, from which it could be held that the driver of the tractor was negligent in failing to see the body under the circumstances shown in the record.

We are therefore of the opinion that there is no liability on the part of the company for the unfortunate death of this employe; and therefore the judgment must be reversed and the suit dismissed.

Reversed and dismissed.